IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

UNITED STATES OF AMERICA,

v.                                              CASE NO.: CR509-17

JAY WAYNE BURCH, JR.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Jay Wayne Burch ("Defendant" or "Burch") is charged with violating 18 U.S.C. § 922(g)(1), possession of two (2) firearms by a convicted felon. Burch filed a Motion to Suppress, to which the Government responded. The undersigned conducted an evidentiary hearing on November 19, 2009, at which Lynn Johnson, Austin Kirton, Christopher Cook, Jonathan Chancy, Defendant, and David Flansburg testified.

## FINDINGS OF FACT

The credible testimony[1] at the evidentiary hearing established the following:

On the evening of November 6, 2008, David Flansburg ("Flansburg") lived on Raulerson Circle in Charlton County, Georgia, and called Erin King with the Charlton

---

[1] An evidentiary hearing was conducted on Burch's Motion to Suppress so that the undersigned could make credibility determinations and develop the facts of this case. Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1211 (11th Cir. 2003). "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). As the fact finder at the evidentiary hearing, the undersigned had the opportunity to observe the witnesses and their demeanors and to hear their testimony. The undersigned finds the testimony given by Flansburg and the officers to be more credible than that of Defendant, particularly in light of various portions of their testimony being corroborated by another witness' testimony.

County Sheriff's Office[2] to voice a complaint about loud music coming from his neighbor's (Burch) house. Flansburg testified that Burch had played loud music at his house on previous occasions, and, on the date in question, Burch's music was playing "continuously" "for a couple of hours at least." (Hr'g. Tr., p. 91). Flansburg also testified that the music was loud enough to vibrate the windows in his house and that it "sounded like [bass]." (Id.). Flansburg stated that, although he did not know exactly when Burch turned off the music, the music had stopped playing when he opened the door to his house and saw law enforcement personnel at Burch's house.

Austin[3] Kirton ("Kirton"), a deputy with the Charlton County Sheriff's Office, responded to a dispatch call concerning loud music at 120 Raulerson Circle on November 6, 2008. (Kirton stated that he had been to this address about a week before because of a complaint about loud music, and he saw Defendant on that prior occasion. According to Kirton, he then informed Defendant that if there were another report of loud music coming from his house, he would be issued a citation.) Christopher Cook ("Cook"), a correctional officer, was "riding along" with Kirton on November 6, 2008, and Sergeant Jonathan Chancy ("Chancy") and Deputy Nicholas McDowell ("McDowell") from the Sheriff's Office and Benjamin Owens ("Owens") with the Folkston Police Department were also at Burch's residence, having arrived in separate cars. (Id. at 16, 19). Kirton testified that he could not recall if he heard music when he arrived at Burch's residence. However, Kirton also stated that he, Chancy, and Owens discussed issuing

---

[2] Lynn Johnson ("Johnson") is a Communications Officer with the Charlton County Sheriff's Office. Johnson testified that Flansburg's call to King was made to her cell phone, which was not the standard practice for the Sheriff's Office but was acceptable. King no longer works for the Sheriff's Office but was available to testify on the date of the evidentiary hearing. (Hr'g. Tr., pp. 4, 8).

[3] Kirton first name is given as "Austin" and as "Gerald" in the hearing transcript.

2

Burch a citation under state law for maintaining a disorderly house based on the loud music complaint and decided to do so. Kirton testified that he and McDowell went to the front door of Defendant's residence and knocked on the door while "hollering 'Mr. Burch, the Sheriff's Office.'", for about five to ten minutes. (Id. at 19). Kirton declared that Chancy and Owens went around to the right side of Defendant's house, that he heard Chancy "holler 'gun[ ]'", (id. at 20), and that he went to the area where Chancy was. Kirton stated that he then went back to the front of the house and knocked on the front door. Kirton also stated that Captain Kenny Jones told him at least one month before this incident that Burch is a convicted felon, but that information had nothing to do with why he and the other officers were at Defendant's house on the night in question. Kirton further stated that, after he arrested Defendant, he recovered a Savage Arms Model 65, .22 magnum rifle on the couch and a Navarra double-barrel shotgun on a bed.

Cook testified that, when he and Kirton arrived at Defendant's house, he heard "a loud booming music like [bass] booming." (Id. at 38). Cook testified that, after he and Kirton arrived at Burch's house and Kirton was speaking with the other officers, the music was very loud, and all of a sudden, it stopped. Cook also testified that Kirton then said, "'I guess he knows we're here now.'". (Id. at 40). Cook stated that the music was so loud, it was as if "you were outside a nightclub and you heard the music from inside." (Id.).

Chancy testified that he has worked with the Sheriff's Office since 1991 when he worked as a correctional officer and at which time Defendant was incarcerated. Chancy stated that, when he arrived at Burch's residence, Kirton was already there, and Owens

3

AO 72A
(Rev. 8/82)

arrived later. Chancy stated that he, Kirton, and Owens discussed writing a citation to Burch for playing loud music, even though he did not recall hearing anything coming from the house at the time. According to Chancy, Kirton told him that he had to come to Burch's house on a previous call concerning loud music. Chancy testified that Kirton knocked on the front door, said "Sheriff's Office", and got no response, so Chancy went to the side of the mobile home. Chancy stated that he was able to look through a window on the side of the mobile home into what appeared to be a bedroom and could see a shotgun on the bed from the light coming from the living room. Chancy also stated that he yelled "to everyone there was a gun" (id. at 55), and that he knew Defendant is a convicted felon. Chancy testified that he then went to the back of the mobile home and saw an opened window with no screen. Chancy testified that he saw Burch sitting on the couch as if he was passed out, asleep, or ignoring the officers and had a rifle beside him on the couch. Chancy further testified that he pointed his service weapon at Defendant and told him not to move toward the rifle. Chancy stated that he told Kirton to come into the house, which he did after Burch opened the door, and Kirton arrested Burch.

Burch contends that he was arrested without a valid arrest warrant and that officers did not have a valid search warrant or probable cause, in violation of the Fourth Amendment. Burch also contends that officers had no basis to issue a citation and that anything the officers observed was observed when officers trespassed on his property. Burch requests that the evidence seized as a result of the police officer's unconstitutional conduct be suppressed and that the government's witnesses be enjoined from mentioning this evidence.

4

## DISCUSSION AND CITATION TO AUTHORITY

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Searches conducted "'without prior approval by [a] judge or magistrate[ ] are *per se* unreasonable under the Fourth Amendment[.]'" O'Rourke v. Hayes, 378 F.3d 1201, 1208 (11th Cir. 2004) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). However, under the plain view doctrine, "if [a] police [officer is] lawfully in a position from which [he can] view an object, if its incriminating character is immediately apparent, and if the officer[ ] ha[s] a lawful right of access to the object, [he] may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 374-75 (1993). "The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment- or at least no search independent of the initial intrusion that gave the officers their vantage point." Id. at 375; see also O'Rourke, 378 F.3d at 1208 (noting that no search, and thus no Fourth Amendment violation, has occurred when an officer uses his eyes in a place where the officer has the right to be). When an officer observes an object left by its owner in plain view, no search occurs because the owner has exhibited "no intention to keep [the object] to himself." Illinois v. Cabellas, 543 U.S. 405, 416 n.6 (2005) (Souter, J., dissenting).[4]

---

[4] At the conclusion of the evidentiary hearing, the undersigned asked Assistant United States Attorney Buerstatte if he was asserting a plain view exception and not a search incident to an arrest exception to

5

The evidence before this Court reveals that Flansburg had had problems with Burch playing his music too loudly, and, on November 6, 2008, he called law enforcement personnel and complained about Burch's music. Law enforcement officers were dispatched, and the testimony reveals that Burch was going to be issued a citation for keeping a disorderly house pursuant to O.C.G.A. § 16-11-44.[5] Though Kirton and Chancy did not recall if there was music coming from Burch' house when they arrived, this does not mean the music was not playing at that time. Cook testified that the music was very loud, it stopped, and Kirton commented about Defendant's apparent awareness of the officers' arrival. Cook's testimony is bolstered by Flansburg stating that after the music stopped, he noticed police officers at Burch's house. This testimony indicates that Defendant was aware of the officers' presence, yet he did not answer the door when he heard a knock. It was permissible for Chancy to look into a window in an attempt to determine Defendant's location in the mobile home. That was when Chancy saw a shotgun on the bed. Apparently not able to see Defendant, Chancy went to another window, looked inside, and saw Defendant sitting on the couch with a rifle beside him. Kirton's and Chancy's testimony reveal that they knew Burch is a convicted felon. Thus, the "incriminating nature" of the firearm in the house with a convicted felon was "immediately apparent." See Dickerson, 508 U.S. at 374-75. Under the plain-view doctrine, no search, and thus, no violation of Burch's Fourth Amendment rights,

---

the Fourth Amendment, and Buerstatte stated that was correct. However, in his post-hearing brief, Buerstatte only mentions plain view in passing and focuses on the exigent circumstances exception.

[5] "A person who keeps and maintains, either by himself or others, a common, ill-governed, and disorderly house, to the encouragement of gaming, drinking, or other misbehavior, or to the common disturbance of the neighborhood or orderly citizens, is guilty of a misdemeanor." O.C.G.A. § 16-11-44.

AO 72A
(Rev. 8/82)

occurred. Accordingly, the two (2) firearms Kirton seized after Burch's arrest should not be suppressed.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Burch's Motion to Suppress be **DENIED**.

So **REPORTED** and **RECOMMENDED**, this 11th of February, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)