| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: CR509-17 |
| | : | |
| JAY WAYNE BURCH, JR. | : | |

## MAGISTRATE JUDGE'S SUPPLEMENTAL REPORT AND RECOMMENDATION

Defendant Jay Wayne Burch ("Defendant" or "Burch") is charged with violating 18 U.S.C. § 922(g)(1), possession of two (2) firearms by a convicted felon. Burch filed a Second Motion to Suppress based on "newly discovered evidence". (Doc. No. 54, p. 1). The undersigned conducted an evidentiary hearing on June 14, 2010, at which Pete Yarbrough, Kristen Yarbrough, and Jonathan "Joey" Chancy testified. The undersigned previously conducted a hearing on November 19, 2009, at which Lynn Johnson, Austin Kirton, Christopher Cook, Joey Chancy, Defendant, and David Flansburg testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearings established the following:

On the evening of November 6, 2008, officers with the Charlton County Sheriff's Office went to answer a complaint about loud music coming from Defendant's trailer at 120 Raulerson Circle in Charlton County, Georgia. One of Defendant's neighbors, David Flansburg, called in the noise complaint, and he testified that Burch had played

loud music at his trailer on previous occasions. Christopher Cook ("Cook"), a correctional officer on a "ride along" with a Sheriff's Deputy that night, testified that the music was really loud when he arrived at Defendant's trailer and described it as "a loud booming music like [bass] booming[ ]", (First Hr'g Tr., p. 38), and being as if "you were outside a nightclub and you heard the music from inside." (Id. at p. 40). Cook declared that all of the sudden, the music stopped, and Austin Kirton ("Kirton") remarked, "I guess he knows we're here now." (Id.). Kirton testified that he had been at Defendant's trailer about a week prior to November 6, 2008, concerning a complaint about loud music, and that Defendant was informed at that time he would be issued a citation if the Sheriff's Office received another complaint about his loud music. Kirton also testified that he and two (2) other officers at the scene discussed issuing Burch a citation under state law for maintaining a disorderly house based on this second loud music complaint and decided to do so. Kirton further testified that he and Deputy Nicholas McDowell went to the front door of Defendant's trailer and knocked on the door while "hollering 'Mr. Burch, the Sheriff's Office.'", for about five to ten minutes. (First Hr'g Tr., p. 19). Burch did not come to the door. Sheriff's Deputy Joey Chancy ("Chancy") went around the right-hand side of the trailer (the side with the "tongue", or hitch, of the trailer) and looked into the window which is on that side of the trailer and which had a covering of some sort on it.[1] Although Chancy had to look closely into the window because of the covering, he was able to see a shadow and see a shotgun on the bed from a light coming from another room without having to move whatever was covering the window

---

[1] Chancy testified that, while there was a covering of some description hanging in this window on the night in question, the cardboard piece shown in the parties' exhibits was not on the window at that time. This is consistent with Pete Yarbrough's testimony that the hole was open and there was nothing covering the hole in the window at the time.

AO 72A
(Rev. 8/82)

or without having to stand on the tongue of the trailer. Chancy alerted the other officers to the presence of the shotgun by yelling, "Gun!". Chancy testified that he knew Burch had been convicted of a felony, as he worked as a correctional officer during a time when Burch was incarcerated. Chancy then went to the back of Defendant's trailer, where he saw another officer with his gun pointed at Defendant through the open window. Kirton stated that he knocked on the front door of Defendant's trailer again. Chancy told Kirton to come into the house, which he did after Burch opened the door, and Kirton arrested Burch.

Defendant ostensibly contends that the officers' actions violated his Fourth Amendment rights.

## DISCUSSION AND CITATION TO AUTHORITY

### I. Credibility Determinations

An evidentiary hearing was conducted on Burch's Second Motion to Suppress so that the undersigned could make credibility determinations and develop the facts of this case. Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1211 (11th Cir. 2003). "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

As the fact finder at the evidentiary hearing, the undersigned had the opportunity to observe the witnesses and their demeanors and to hear their testimony. Pete and Kristen Yarbrough testified that they were living at 118 Raulerson Circle on the evening of November 6, 2008, which was adjacent to Defendant's trailer. The Yarbroughs stated that they were standing on the front porch of their trailer and heard loud music

AO 72A
(Rev. 8/82)

coming from Defendant's trailer. The music was not loud enough, in Mr. Yarbrough's estimation, to call law enforcement to complain. The Yarbroughs testified that they saw police officers arrive at Defendant's trailer, and they heard the officers knock on the front door[2] and call for Defendant, but Defendant did not answer the officers' knocks. The Yarbroughs also testified that at least two (2) officers left the front of Defendant's trailer; at least one (1) of these officers went to the right-hand side of the trailer, and at least one (1) officer went to the back of the trailer. The Yarbroughs further testified that they saw the officer who was on the right-hand side of the trailer and who appeared to be about 5'9", stand on the tongue of the trailer to look into the window, which was about four (4) feet off the ground.

The undersigned finds the testimony given by Chancy and the other officers to be more credible than that of Pete and Kristen Yarbrough, particularly in light of Chancy's testimony being consistent with the testimony he and other officers provided at the first evidentiary hearing and that certain portions of the Yarbroughs' testimony are not consistent with each other. Additionally, as discussed in note 2 of this Report, Pete Yarbrough's testimony was inconsistent. Moreover, though it is difficult to determine from the photographs the parties submitted at both hearings, it appears that the Yarbrough's trailer was 30 to 50 yards from Burch's trailer. It also appears that it would have been difficult for the Yarbroughs to have clearly witnessed the officers' actions on November 6, 2008. Based on the photographs, the Yarbroughs would have had to look

---

[2] Pete Yarbrough initially testified that the officers knocked on the front door for "quite a bit" of time (Hr'g Compact Disc, 3:13:51), but later testified that the knocking at the front door lasted "not longer than a minute", about 30 to 45 seconds (Id. at 3:26:39). However, Kristen Yarbrough testified that, though she was not sure how long the officers knocked at the front door, it was about 5 to 10 minutes. (Id. at 3:46:45) The 5 to 10 minute duration of the knocking is consistent with Austin Kirton's testimony during the first evidentiary hearing. (Report and Recommendation, p. 3) (citing Hr'g Tr., p. 19).

4

behind them and over a wooden fence to see the side and back of Burch's trailer from their front porch. In addition, the events of November 6, 2008, occurred in the evening hours—at least after 7:00 or 8:00 p.m.; it would no longer have been daylight at that time of year, and there were no outdoor lights illuminated on or around Burch's trailer. Further, Pete Yarbrough estimated that the officer who looked into the side window (which, again, was about four (4) feet off the ground) was about 5'9", which is a far cry from the 6'2" Chancy stated was listed on his driver's license. Chancy would not have had to step on the trailer's tongue to look into Burch's window. The undersigned finds the Yarbroughs' testimony less credible than that provided by the officers during both evidentiary hearings, as the officers were closer to Burch's trailer and to each other than the Yarbroughs were.

## II.   Fourth Amendment Issues

"The right of the people to be secure in their person, trailers, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Searches conducted "'without prior approval by [a] judge or magistrate[ ] are *per se* unreasonable under the Fourth Amendment[.]'" O'Rourke v. Hayes, 378 F.3d 1201, 1208 (11th Cir. 2004) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). However, under the plain view doctrine, "if [a] police [officer is] lawfully in a position from which [he can] view an object, if its incriminating character is immediately apparent, and if the officer[ ] ha[s] a lawful right of access to the object, [he] may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 374-75

AO 72A
(Rev. 8/82)

(1993). "The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment- or at least no search independent of the initial intrusion that gave the officers their vantage point." Id. at 375; see also O'Rourke, 378 F.3d at 1208 (noting that no search, and thus no Fourth Amendment violation, has occurred when an officer uses his eyes in a place where the officer has the right to be). When an officer observes an object left by its owner in plain view, no search occurs because the owner has exhibited "no intention to keep [the object] to himself." Illinois v. Cabellas, 543 U.S. 405, 416 n.6 (2005) (Souter, J., dissenting).

The testimony provided at the June 2010 evidentiary hearing does not change the undersigned's Fourth Amendment analysis and conclusion from the first Report and Recommendation. The evidence from the November 2009 hearing revealed that: officers received a complaint about loud music coming from Defendant's trailer; the music was turned off after officers arrived at Defendant's trailer; Burch did not answer the door when officers knocked and announced their presence; a complaint about loud music coming from Defendant's trailer had been made on a previous occasion; and officers knew Burch is a convicted felon.

As set forth in the undersigned's Report and Recommendation dated February 11, 2010, which was adopted by the Honorable Lisa Godbey Wood by Order dated April 5, 2010, the undersigned notes the following:

> It was permissible for Chancy to look into a window in an attempt to determine Defendant's location in the mobile home. That was when Chancy saw a shotgun on the bed. Apparently not able to see Defendant, Chancy went to another window, looked inside, and saw Defendant sitting

6

on the couch with a rifle beside him. Kirton's and Chancy's testimony reveal that they knew Burch is a convicted felon. Thus, the "incriminating nature" of the firearm in the house with a convicted felon was "immediately apparent." See Dickerson, 508 U.S. at 374-75. Under the plain-view doctrine, no search, and thus, no violation of Burch's Fourth Amendment rights, occurred. Accordingly, the two (2) firearms Kirton seized after Burch's arrest should not be suppressed.

(Doc. No. 43, pp. 6-7).

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Burch's Second Motion to Suppress be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 6th of July, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)