# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| vs. | * | CR 509-17 |
| | * | |
| JAY WAYNE BURCH | * | |
| | * | |

## ORDER

After an independent and de novo review, the undersigned adopts the Magistrate Judge's Report and Recommendation, to which Defendant Jay Wayne Burch has filed Objections. Defendant's Motion to Suppress is hereby **DENIED**.

## BACKGROUND

On the evening of November 6, 2008, David Flansburg contacted the Charlton County Sheriff's Office to complain about loud music coming from a neighboring trailer home belonging to Defendant Jay Wayne Burch, located at 120 Raulerson Circle in Charlton County, Georgia. Deputy Austin Kirton, who was in a patrol car with Correctional Officer Christopher Cook, responded to the resulting dispatch call at approximately 8 p.m.

Kirton and Cook arrived at 120 Raulerson Circle at about the same time as Officer Ben Owens of the Folkston Police Department, who also responded to the complaint. Hr'g Tr. 32, Nov. 17, 2010 (hereinafter, Nov. 2010 Hr'g). Soon thereafter, Sergeant Jonathan Chancy and Officer Nicholas McDowell of the Charlton County Sheriff's Office arrived at the scene in separate cars. Kirton and Owens briefly discussed how they should address the situation. Kirton told Owens that he had been called to Burch's residence a week before due to a similar noise complaint and that he had warned Burch that another complaint would result in a citation. Id. at 25. Following the discussion, Kirton, Owens, Chancy, and McDowell approached Burch's trailer to issue a citation for maintaining a disorderly house, while Cook remained in the patrol car.

According to Cook, extremely loud music had been emanating from Burch's trailer but stopped suddenly sometime between the officers' arrival at Raulerson Circle and their approach toward Burch's home, at which point Kirton remarked, "I guess [Burch] knows we're here now." Id. at 85. But the record is unclear as to the loud music purportedly coming from Burch's trailer. Cook claims that the music was so loud at one point that it was like being "outside a night club." Hr'g Tr. 40, Nov. 19, 2009 (hereinafter, Nov. 2009 Hr'g). However, Kirton, who arrived with Cook in the same vehicle, testified in 2009, "I can't remember

2

to this day if there was any music playing." Id. at 27. He later testified in 2010 that there was "loud music coming from the residence" but concluded during the same testimony that he was not sure if there was music after all. Nov. 2010 Hr'g 36-37.

In any event, Kirton and McDowell approached the front door of Burch's trailer and began knocking. They continued knocking and yelling "sheriff's office" for several minutes but heard no response. Nov. 2010 Hr'g 42. Meanwhile, Chancy walked toward the right side of the trailer, where the "tongue" or hitch of the trailer is located, and approached a window.

At this point, the record is somewhat unclear as to what Chancy did or saw. Chancy testified initially that he "didn't recall anything covering that window" but then stated moments later that there was something resembling a "sheet [] over the window," such that it covered the window but "was thin enough that you could see the light coming from inside very well." Nov. 2010 Hr'g 126-27. Chancy claims that without touching or moving the thin covering, he could "see a form or figure" resembling someone sitting on a couch in the living room and saw what he made out to be shotgun on a bed in a bedroom. Id. at 129-31.

As Chancy peered through the window and observed the shotgun on the bed, he saw a figure move toward the gun, at which point he yelled, "gun." Id. at 131. Although he did not know what the figure was at the time, Chancy concedes that he

3

eventually ascertained that the figure was a dog. Id. Chancy immediately went around the backside of the trailer, where he encountered Owens "standing in a window that was wide open covering someone in there with his weapon." Id. at 133-35. Chancy observed that Owens was pointing his weapon through the open window at Burch, who was sitting on a couch next to a rifle leaning six to eight inches away from him. Id. At that time, according to Chancy, Burch had his head back with his eyes closed and was unresponsive to announcements that sheriffs were present, leading Chancy to believe that Burch had passed out or was asleep. Id. at 135-36. Burch claims that he was, indeed, asleep after having taken Percocet, Avintza, and Seroquel—all medications apparently prescribed by his doctor. Id. at 200. When Burch became responsive, Chancy, who had also drawn his weapon, warned him not to reach for the gun. Id.

Chancy directed Burch to move toward the door. Id. at 217. Chancy then communicated to Kirton, who was on the front porch with Owens, that Burch would be opening the door. According to Kirton, Burch opened the door and came outside, at which point Kirton placed Burch in handcuffs and put him in the back of a patrol car. Id. at 47. The location of Burch's handcuffing is not entirely clear from the record, however. Cook testified that he did not see who actually opened the door but observed Kirton place Burch in handcuffs out on the porch. Id. at 92. Burch

4

claims that upon opening the door, he was "immediately grabbed ahold of, pulled out and down on [his] porch, and handcuffed." Id. at 218. Kirton then walked back into the trailer and secured the rifle that was leaning up against the couch and retrieved the shotgun that was on the bed in the bedroom. Id. at 48-49.

Burch, who is a convicted felon, was charged with possession of firearms by a convicted felon on November 7, 2008. Dkt. No. 1. Burch moved to suppress "all evidence seized as incident to or as basis for his arrest," alleging that the officers' warrantless arrest and search on the evening of November 6, 2008, violated the Fourth Amendment. The Magistrate Judge held a hearing on November 19, 2009, and recommended to the Court that Burch's motion to suppress be denied. See Dkt. No. 43. The Court adopted the Magistrate Judge's report and recommendation on April 6, 2010. See Dkt. No. 49.

Burch filed a second motion to suppress, citing the discovery of two eyewitnesses—Pete and Kristen Yarbrough—to Burch's encounter with the officers. The Magistrate Judge held a hearing on the second motion to suppress on June 14, 2010, and in a supplemental report and recommendation, recommended to the Court that the second motion to suppress be denied. Burch filed an objection to that report and recommendation, disputing the Magistrate Judge's finding of exigent circumstances. This Court

5

held an additional hearing and now addresses Burch's objection to the supplemental report and recommendation.

**DISCUSSION**

**1. Warrantless Arrest**

The Fourth Amendment of the United States Constitution prohibits law enforcement officers from conducting "unreasonable searches and seizures." United States v. Williams, 619 F.3d 1269, 1270 (11th Cir. 2010). "An arrest is quintessentially a seizure of the person, and therefore subject to the Fourth Amendment's reasonableness requirement." McClish v. Nugent, 483 F.3d 1231, 1238 (11th Cir. 2007). It is well-established that under the Fourth Amendment, warrants are not required for arrests conducted in public places but are required for in-home arrests. Payton v. New York, 445 U.S. 573, 589-90 (1980).

The Government does not dispute that officers arrested Burch without a warrant. There is a question, however, of whether the arrest was effectuated in Burch's home, in which case the arrest would be subject to the warrant requirement, or just outside his home in a public place, in which case the warrant requirement would not apply.

Although the sides disagree on where Burch was handcuffed, the facts clearly indicate that Burch was arrested in his home. An arrest "requires *either* physical force [] *or*, where that is

absent, *submission* to the assertion of authority." <u>Calif. v. Hodari D.</u>, 499 U.S. 621, 626 (1991). Thus, an arrest may have occurred even in the absence of physical contact, so long as the officers asserted their authority and Burch submitted to that assertion. In the context of deciding whether an encounter between officers and an individual constituted a seizure, the Eleventh Circuit has explained that an assertion of authority may involve factors including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." <u>United States v. Baker</u>, 290 F.3d 1276, 1289 (11th Cir. 2002). Applying those factors as a loose guide, Kirton, Owens, McDowell, and Chancy collectively asserted their authority as law enforcement officers. At the moment Burch awoke on his couch to Chancy's instructions, a total of four uniformed police officers had surrounded his trailer. Chancy and Owens stood in the window with guns drawn and instructed Burch to move toward the front door. Kirton and McDowell, who had been knocking on the door while yelling "sheriff's office," waited to place him in handcuffs. In sum, four uniformed officers, two of whom had their guns pointed at Burch, repeatedly knocked on Burch's door while shouting "sheriff's office," and instructed Burch to move toward his

7

front door so that they could place him in handcuffs. The officers clearly asserted their authority in this situation.

It is equally clear that Burch submitted to this assertion of authority. When Burch awoke on his couch, he was instructed not to reach toward the rifle next to him and was told to approach the front door. Burch did exactly as he was instructed. When he reached the door, Burch allowed Kirton to handcuff him without any resistance. Burch thus submitted to the officer's show of authority while he was in his home. As a result, under the Supreme Court's definition of an arrest in Hodari D., Burch was arrested in his home, such that the warrant requirement applied to the arrest.

That the officers, at least according to their testimony, never physically entered the trailer to conduct the arrest does not change the fact that an arrest took place inside the home. Although it does not appear that the Eleventh Circuit has directly addressed this issue,[1] "every court that has considered

---

[1] In United States v. Kimmens, the suspect claimed that law enforcement officers effectively arrested him in his home, even though they remained outside. 965 F.2d 1001 (11th Cir. 1992), rev'd on other grounds, Small v. United States, 508 U.S. 902 (1993). Rather than address that argument, the court found that exigent circumstances applied, such that no warrant was necessary, regardless of where the arrest took place. In Knight v. Jacobson, the Eleventh Circuit held that Payton "does not prevent a law enforcement officer from telling a suspect to step outside his home and then arresting him without a warrant" because "[i]n that situation, the officer never crosses 'the firm line at the entrance to the house,' which is where Payton drew the line." 300 F.3d 1272, 1277 (11th Cir. 2002)(quoting United States v. Berkowitz, 927 F.2d 1376, 1386 (7th Cir. 1984)). The court noted that in Knight, the officer merely asked the suspect to step outside and arrested the suspect after he complied. The court then explicitly distinguished Knight from cases where a "suspect leaves his home because of coercive tactics by

the issue . . . has concluded that if the police force a person out of his house to arrest him, the arrest is deemed to have taken place *inside* his home, and the *Payton* warrant requirement applies." Fisher v. City of San Jose, 509 F.3d 952, 959 (9th Cir. 2007). In analyzing whether the warrant requirement applies, "it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home." Sharrar v. Felsing, 128 F.3d 810, 819 (3d Cir. 1997), rev'd on other grounds, 499 F.3d 199 (3d Cir. 2007)(holding that arrest took place inside home even though officers did not physically enter residence to place suspect in custody); see also United States v. Maez, 872 F.2d 1444, 1451 (10th Cir. 1989); United States v. Morgan, 743 F.2d 1158, (6th Cir. 1984); United States v. Johnson, 626 F.2d 753, 757 (9th Cir. 1980), aff'd on other grounds, 457 U.S. 537 (1982).

The officers thus arrested Burch in his home, such that the warrant requirement applied to the arrest.

### 2. Exigent Circumstances

"[A] warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest *and* either consent to enter or exigent

---

the police" and stated "there were no such tactics in this case, just a simple direction by one officer that Knight step outside." Id. at 1278 n.5. Since coercive tactics are present in this case, the Court here does not address the issue that confronted the Eleventh Circuit in Knight.

AO 72A
(Rev. 8/82)

circumstances" excused the officer from obtaining a warrant prior to the arrest. Bashir v. Rockdale Cty., Ga., 445 F.3d 1323, 1328 (11th Cir. 2006). Because "warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment, the Government bears the burden of proving an exception to the warrant requirement, such as consent, or probable cause coupled with exigent circumstances." United States v. Smalls, 617 F. Supp. 2d 1240, 1252 (S.D. Fla. 2008).

Defendant objects to the Magistrate Judge's finding that exigent circumstances excused the officers from the warrant requirement before arresting and searching Burch. See Dkt. No. 67. It is beyond dispute that probable cause existed when officers, who knew that Burch is a convicted felon, saw that Burch had guns in his possession in violation of 18 U.S.C. § 922(g)(1), which prohibits the possession of firearms by convicted felons.

The Government argues that exigent circumstances, as defined by the Eleventh Circuit in United States v. Standridge, 810 F.2d 1034 (11th Cir. 1987), created an exception to the warrant requirement in this case. In Standridge, the Eleventh Circuit stated, "Factors which indicate exigent circumstances include: (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the

10

AO 72A
(Rev. 8/82)

suspect committed the crime; (4) strong reason to believe the suspect is in the premises being entered; (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public." 810 F.3d at 1037. Stated somewhat differently, the "exigent circumstances doctrine extends to situations involving 'danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit.'" United States v. Tennis, 309 F. App'x 312, 313 (11th Cir. 2009).

Because the officers in this case knew Burch was a convicted felon and saw him sitting in his trailer in possession of firearms, it was obvious that Burch was (1) armed, (2) committing a crime, and (3) in the premises. Although wrongful possession of firearms by a felon is not in and of itself a violent crime, it is a serious one, the gravity of which is exacerbated by the very fact that a firearm is involved. On the other hand, several factors undermine the Government's claim that exigent circumstances were present. In this case, there was no apparent danger of evidence destruction, given that the evidence consisted of two large guns, nor was there any real risk of flight or escape, in light of the fact that the officers had effectively surrounded Burch's trailer.

While the question is a close one, the Court is convinced that the risk of harm to the officers created an exigent circumstance that justified the officers' warrantless in-home arrest in this case. As an initial matter, there is binding authority indicating that exigent circumstances arise virtually whenever officers reasonably believe that a suspect is armed. In United States v. Smalls, 342 F. App'x 505 (11th Cir. 2009), officers made an in-home arrest of a suspect without a warrant after having received an anonymous tip stating that the suspect had guns at his residence, where he sold drugs. The Eleventh Circuit held, "[b]ecause the anonymous tip warned of guns and had proved otherwise reliable, the officers had reason to suspect that Smalls was in possession of a firearm, which created an exigent circumstance to arrest Smalls without a warrant." Id. at 509. In this case, Officers Chancy and Owens had more than an anonymous tip that Burch had guns—they observed first-hand that Burch had at least two firearms in his possession. Moreover, one of the guns was easily within Burch's reach, located no more than six to eight inches away from him. See Nov. 2010 Hr'g at 136.

Adding to the exigency was Burch's reputation among local law enforcement. According to Kirton's testimony, the chief investigator of the Charlton County Sheriff's Office had warned him that Burch could be armed and that he should "be careful"

12

when encountering Burch. Id. at 27. Furthermore, there is evidence that Burch had caused problems for law enforcement in the past, perhaps even resisting arrest. Chancy testified, "Usually, if you had to take him in, it was going to be a fight. He was going to fight you. You had to restrain him to get him and take him in." Id. at 118.

Arguably, a lone man sleeping on a couch in his home who did nothing more than play his music too loudly to draw the attention of law enforcement presents little risk of harm to the police or the public. But at the time of the arrest, Officers Chancy and Owens could not have been aware of all of the facts. They could not have known whether Burch was feigning sleep while planning to attack the officers by surprise. Indeed, it is understandable why the officers would presume true sleep inconsistent with loud music. Nor could they have known whether another individual was present in some part of the trailer that they had not yet observed. What they saw on the evening of November 6 was a known felon armed with a gun within easy reach who had a history of belligerent behavior toward law enforcement. As a result, the exigency of the situation made the warrantless in-home arrest in this case lawful.

Despite this finding of exigent circumstances, the Court has some reservations about the conduct of the officers involved in the arrest. If the Charlton County Sheriff's Office had

reliable information indicating that Burch was a felon in possession of firearms two or three months prior to this incident, it is unclear why the officers did not then seek a warrant. Nonetheless, the warrantless in-home arrest did not amount to a violation of the Fourth Amendment because of the exigent circumstances in the case.[2] As a result, Defendant's objection to the Magistrate Judge's report and recommendation fails. Never let it be said that Mr. Burch's motion was not fully heard. Multiple hearings and multiple rounds of briefings formed the basis of the decision herein.

**CONCLUSION**

For the reasons stated, Defendant's motion to suppress is **DENIED**.

**SO ORDERED**, this 3rd day of March, 2011.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[2] Although Defendant's objection to the report and recommendation challenges only the Magistrate Judge's finding of exigent circumstances, the Court notes that the subsequent warrantless seizure of the gun leaning against Burch's couch adjacent to the front door of the trailer was permissible under the search incident to arrest exception. See Holmes v. Kucynda, 321 F.3d 1069, 1082 (11th Cir. 2003)(explaining that officers may search the "area from within which [the arrestee] might gain possession of a weapon or destructible evidence." (quoting Chimel v. Calif., 395 U.S. 752, 763 (1969))).

AO 72A
(Rev. 8/82)